1-7-1-2-8-1 Skell Greer v. City of Highland Park MI Argument not to exclude James McGinnis on behalf of the appellants. I think the first argument that has to be raised is whether or not the appellees appropriately articulated a constitutional violation. And if so, what standard is that measured against? The appellees take the position that they only are required to give notice pre-pleading and after that the court has to view all of the allegations in the light most favorable to them. I would respectfully dispute that position. Iqbal says that one, you have to have well-pled allegations. The court is not required to accept allegations that are conclusory. Can you give me a sense of what's deficient about the complaint? The complaint seems to set forth the allegations that this intrusion, we'll call it, the search was unconstitutional because there was no knock and announce by the officers. The execution of the search was excessive or unreasonable by an objective standard in terms of guns being pointed at the family, things of that nature. That's all set forth in the complaint. I'm not sure why those sort of factual allegations would not set forth some sort of a plausible claim for release. Because that's all we're looking at right now, aren't we?  Plausibility. Yeah, plausibility. But I think it only rises to the level of possibility. One, they don't articulate who did what. They say that all of the officers came in, all of the officers made misrepresentations, all of the officers took Mr. Lawrence in the basement, etc. We know which officers were there, right? Pardon? We know which officers were there, we just don't know, or they don't know who did what, right? No, I am not conceding that point. For example, they know that Chief Clooney was there, Officer McMahon was there, the female officer, Heather Holcomb, was there, and then Officer Dupree was there. They don't know the identities of the others. But they do know that Heather Holcomb was the only female officer. She was a canine officer. She came in, the dog sniffed around, she assisted the older sister to help the younger sister to change her clothes and go to the bathroom. And then she took out an ID card and looked at the identities of the occupants. That's all she did. But she's accused of misrepresenting the allegations in the search warrant, to holding guns on the occupants, to apprehending Mr. Lawrence. We know she didn't do that, and so those allegations should not be liased against her. Is there a separate motion to dismiss her individually? She was included in... I understand, but you would like to have it parsed per officer, and I don't think from your side of the case you have done that either. Well, let me, if I may, take it a step further. They found out, for example, that there were names associated with this raid. One name was Officer Dupree. They checked the roster of Highland Park. There are two Duprees. They sued both of them. What they didn't know was that Kelly Dupree was a female. Ronald Dupree is a male. So if there's only one female in this raid, it's Heather Holcomb, then why do we have Kelly in this? They should have, if I may be presumptuous, you know the chief was there, sued the chief and these officers. Chief, tell us who was on this raid, who was not on this raid. Chief, tell us who went into the house, who protected the perimeter, some of the officers outside, some of them on the side, etc. Who did what in this raid? You can't, I believe at this stage, use a shotgun approach and say that every officer made the misrepresentation. Every officer went into the location. Every officer pointed a weapon at Mr. Lawrence. So there's an attempt to shift that burden onto the defendants. Well, there's a complicating factor here, is there not? The complaint alleges that the officers all had masks on, their identities therefore would have been hidden from the residents. So what the plaintiffs have learned, it appears, about identities of officers, they've learned subsequently. And that's all in the complaint, or at least some of that's in the complaint. But we shouldn't shield the officers from liability here if they go in completely masking their identity. There's something like 13 officers and plaintiffs certainly don't know names of each and every one. Plaintiff knows that there was one female plaintiff knows there weren't 13 officers in the house. So then the question is, should plaintiff do some investigation before suing all of these officers? Should Officer Kelly, who's a female officer, wasn't involved, be dragged along into this lawsuit until plaintiff can determine she wasn't even in this raid? Then, if we allow plaintiffs to do that, then Iqbal and Harlevie Fitzgerald is nullified because there's no weeding out, and there's no burden on the plaintiff to set forth allegations that rise to the level of plausibility. We've got this Burley decision, and it seems to indicate that we should be disinclined to affirm the dismissal of a complaint because the plaintiff has failed to allege the specific conduct by each officer because the officer's actions made them impossible to identify. Why is this not like Burley? So the question is, how far should we extend that burden shifting? Beyond false arrest, into excessive force, into execution of the warrant, all the way to nullifying Iqbal and Haney. Haney takes the position that at every stage, you have to individualize your pleading to make a determination as to who did what. So plaintiff said, well, since some of the officers, and plaintiff does not take the position that all of the officers had masks on, nor did Heather Holcomb, so that some of them had masks on, some of them did not. So you're in a position to, by deposition or interrogators, make a determination, again, who was there and who was not there, even if you have to do it sequentially by adding persons as you go along. Wouldn't that cost everybody? A whole lot of money, isn't that the problem that we're inconveniencing? Doesn't that worsen, I think, the problem that you raise on behalf of your clients here? The expense and the trouble they're going through that they weren't even there with respect to that one female officer? Well, I think that swings in favor of the defendants. If plaintiff has to make a determination as to whether a particular defendant was involved, and determines that that person was not involved and doesn't sue that person, then there's no cost of litigation imposed upon that person. And that's exactly the position that I was taking, that plaintiffs should not impose a burden on a person and sue them when a little investigation would make the determination that the person was not involved, which is exactly what Harlow v. Fitzgerald had in mind when it said that, at the earliest possible stage, the court should weed out these issues and make a determination as to whether or not the plaintiff has made a viable claim or not. Are you suggesting, then, that plaintiffs should have called the city up and said, now, who were all these officers who were at this place at this time? And then you would have provided it before they filed suit. Is that your suggestion? Is it the practice that should happen? I'm suggesting that they knew four officers who were involved, sue those four either by deposition or interrogatory, as the chief of police who was there, who was not there, who went into the house, who did not go into the house, and you make your determination based upon that investigation or that litigation, and then you sue only those people who were involved. But you're saying that they should do all this discovery before filing suit. No, after filing suit. But that's when qualified immunity is first raised, right, almost immediately, right? No, if the officers, pardon? You file your claim for qualified immunity before most discovery goes on, right? That is true. That is true. So if you can't discover, how do you discover? Well, I guess you'd have to do some pre-investigation and the experience says there was one female officer, so how do you justify suing two? You can't, is my position. There's another exception to this notion that you can just give notice pleading and sue everybody, and that is the Scott v. Harris ruling that says that when you have a dispute between the plaintiff and the defendant as to the validity of the search warrant, you don't take the plaintiff's position, you look at the official record. So in this instance, you have an official record, you have the search warrant, so you don't have to accept plaintiff's conclusion that the search warrant was invalid. You can take a look at it and make an independent determination so that this notion that the court has to accept all of these allegations as true is inconsistent with that ruling by the Supreme Court. So you just raised the issue of the validity of the search warrant. The district court found that the warrant was invalid. Am I correct about that? Yes. And so in looking at the affidavit, the only real connection, nexus between the items to be searched and this particular property was what this Russian, Mr. Sturdock or something to that effect, had lived there at one time, and there was a dark Volvo, which was similar to a Volvo that he had been seen unloading nitrous oxide from. But was there any other nexus that would give probable cause for the issuance of this search warrant? One, there's nothing in the complaint about probable cause. That was something the district court came up with. It wasn't researched or anything. It was in her opinion, but it wasn't in the complaint. That's my question. What's in the record that would show there's a fair probability that drugs, weapons, cash proceeds would be found at the Greer's Residence? I think you articulated what my argument would be, but I would take it a step further and ask, is it clearly established law that everybody on a raid team has a responsibility of looking at the warrant and making an independent determination as to the validity of the warrant, even though they probably didn't see it, didn't write it, and if you're on a raid team and five people say it's okay, it's valid, the other five say, no, I don't think it's valid, what do you do? Stop law enforcement until you can deliberate and reach a consensus as to whether or not you agree that the warrant is valid? I don't think the law requires. I'm sorry. I just see red lights on the council. Okay. Thank you. You have your full rebuttal. Thank you. Thank you. Good morning, Your Honor. May it please the Court, Elizabeth Downey for the appellees. I'd like to start by answering a couple of the questions. Mr. McGinnis was not the first attorney for the city on this, and so I want to correct some impressions that were given about what went on and how officers were named in this case. When the Greers were in their house and somebody in masks with long guns and SWAT blew down their front door with a shotgun, they thought it was their local police because there was the word police on the front and somebody came in and they were screaming warrant. So they thought it was probably the local police, which were not Highland Park. It was West Bloomfield Township. We put in our complaint in paragraphs 31, 32, 33 on page ID 313 that when they complained to their local police and demanded an investigation as to why this happened to them, they didn't know who it was who had done this to them, and it was the West Bloomfield Police Department, through their investigation, who found out that the city of Highland Park had run a lean search on this address looking for this Russian. They called the Highland Park Police Department to find out what had gone on in their city, and they spoke with Chief Coney who told them that he was on the raid. That's how we knew that Chief Coney was one of the people to sue. This house was not in Highland Park? No, Your Honor, it was about 15 miles away in a different suburb. Now, the West Bloomfield Police also found out from Highland Park after Chief Coney first told them, no, we didn't have a warrant, we were just looking for a dangerous Russian, but we didn't have a warrant. Then they got another call from Highland Park from a Sergeant Dupuy, a male, who said, no, no, no, the Chief is wrong, we had a warrant, we'll fax you a copy. So we knew that there was a man by the name of Dupuy who was also involved in this. We sent a freedom of information request not only to the Highland Park Police Department, but also to the local district court that issued this alleged search warrant looking for any other information. All we got back was the warrant and the affidavit, which didn't tell us who was on the case. When we originally filed the complaint, the first complaint, docket entry number one, we filed against the city, we filed against Chief Coney, this Sergeant Dupuy, and everyone else was John Does and a Jane Doe. The first attorney for Highland Park and the other defendants did some footwork and she called us back and told us the names of the people that the city said were on the raid. So we filed a first amended complaint to specifically name the people. If Kelly Dupuy was in that group, it's because the attorney for Highland Park at that time told us that Kelly Dupuy was one of those people. We were going off of what our fellow counsel told us about that, and we took that in good faith. If a mistake was made, a mistake was made. That was before any complaint had been filed. No, that was after we filed the John Doe, Jane Doe complaint, and then the counsel for the defense told us what names to put in instead. So we filed a first amended complaint to do that. That's how we found out who should or should not be in this complaint. You didn't get that from Mr. McGinnis as a different lawyer. That was a different lawyer, Your Honor. So I don't blame Mr. McGinnis for not knowing this back story because he wasn't there at the time, but that is exactly how this came about. Now, Mr. McGinnis argues that we should find out which of these masked and disguised people who didn't have badges on, who didn't have name tags on, and we should know who among them did which actions. How? He says by discovery. That's great. That's exactly what we asked for, discovery. We want to find out what each of them has to say because the city is the one who named these people as being the pool of people we should talk to. That's exactly what we want to do. It sounds to me like we have an agreement, not an appeal. Did they object to discovery before this was decided about qualified immunity? They did, Your Honor. The district court allowed us to take a limited number of depositions. We were able to depose Chief Coney. We were able to depose Officer McMahon and Officer Allison. We were not able to depose the others, including Sergeant Dupuis, who was supposed to be in charge of this whole raid because the defense objected to it, pending the motion and then pending appeal. So we were shut down from doing anything else at that point. I think I need not belabor the point that without being able to see behind the mask, if this new rule of law were adopted, it would mean that if the police wanted to deprive people of their rights, do anything to them that they wanted, all they'd have to do is make sure that they wore a mask and didn't create a paper trail. And that's not what we're about. That's not what the Civil Rights Act is about. That's not justice, and we all know that. Now, as to the argument that somehow the district court judge went beyond her authority in finding that the warrant was not based on probable cause, once again, the court is exactly right in the affidavit in support. The only thing they had on this is that five days earlier, the police in Highland Park had raided a blind pig, and one of the people they found there was this Russian who was selling nitrous oxide in balloons from tanks that he had in the back of his car. That's a misdemeanor under Michigan law. They arrested him. I don't know from the complaint. I do know from things not in the record, but I can't say, obviously. They had arrested him five days earlier. We can say that much. So they knew what he looked like. They knew what his car was. They knew it was about nitrous oxide. In the affidavit in support of the warrant, they didn't say anything else except that they thought he lived at this address, and they say that they surveilled it. That's all they had to link this house to any kind of crime whatsoever. Did the search warrant say they were looking for this Russian or looking for something else, narcotics or drugs or something like that? That's the interesting thing, Your Honor. They told both West Bloomfield Police and the family that they were looking for the very dangerous Russian that they had had in custody five days earlier.  Drugs, drug proceeds, ledgers, banking records, things like this, things that would be the proceeds of drug dealing. It didn't say they were looking for the dangerous Russian. There was a mismatch between the two, and that's what we alleged in our second amended complaint as well, that this seems very odd to us. How many officers would be liable for a bad warrant here if they didn't read it? Are they all liable for that even though they didn't read it and they were under the direction of some supervisory officer? Your Honor, I don't believe that if an officer didn't read the warrant and didn't have anything to do with getting the warrant and didn't misrepresent things to the magistrate to get the warrant, I don't believe those individual officers would be personally liable for the bad warrant. I think that they should be able to rely on their supervisors saying, yeah, we have a warrant, we're good to go. That's not our argument, and that wasn't what the district court ruled. If I might point out what the district court said at Record 47, page ID number 528 to 529, if I don't want to do too much here, but, quote, she said, although the police lacked probable cause to enter the premises, the warrant is not facially invalid because it and the attached affidavit, which is incorporated by reference in the warrant, particularly describe the place to be searched and the persons or things to be seized, and then have some citations. Thus, the officers may have reasonably relied on it to enter the home and secure the individuals within the premises. Another citation. And then she goes on to say, but whether the officers acted reasonably with respect to, among other things, how they entered the home and how long they handcuffed Mr. Lawrence are questions of fact. The reason that she denied qualified immunity to these officers was not for failure to read the warrant or because the warrant was facially invalid. She said that the reason that she was denying qualified immunity was because they did not act reasonably under all the circumstances in how they entered the house. In fact, she didn't even go so far as to say that she was making a finding that they acted unreasonably. She said there was a fact question raised by the pleadings as to whether they acted reasonably in executing the search warrant. I think that's well within the law, Your Honor. The defendants, you've addressed this in part, I think, but argue that the plaintiffs here engaged in just notice pleading. It was just notice pleading that is deficient under Iqbal, Twomley, and other cases. And there are, I guess, just not sufficient allegations in the complaint to survive a 12C or 12B6 motion to dismiss. Here, I guess, it was judgment of the pleadings. You've referenced paragraphs, I guess, maybe 30 to 36 or 37. Are there other portions of the complaint that would meet the Iqbal-Twomley test or address the concern that Mr. McGinnis has raised? Certainly, Your Honor. Paragraphs 6 through 39, which end up on page ID number 314. So that would be, let's see, page ID numbers 306 to 314, were nothing but factual allegations. These are factual allegations, for example. And then the structure of the complaint was that after these common factual allegations, we then would say what these meant in terms of law. We do count one and say here's how these actions violated the Fourth Amendment and then go chapter and verse about what they mean. For example, we said that they didn't knock an ounce and the appellants are upset that we said upon information and belief, either there was no knock an ounce at all or, in the alternative, it was too quiet for anybody to hear, either one of which. Because it was the middle of the night, okay. Right. But what we had alleged in the common allegations, paragraph 7, page ID 306, one of the occupants of the house says Mr. Lawrence had gone to bed about 3.45 a.m. in the morning of October 30, 2014. And then paragraph 8, as soon as Mr. Lawrence had laid down and turned off the light, everyone was awakened by a loud bang or boom. Defendants had blown down the front door with a shotgun and swarmed into the house shouting search warrant. Now, we weren't on the front porch. We don't have an eyewitness that could say they didn't knock an ounce. We don't have an eyewitness who said that they tapped very quietly and said search warrant. What we do have is somebody who was awake at the time and we alleged that he didn't hear anything as he laid down to sleep before he heard the front door being blown down. I think that's a plausible statement, not notice pleading. That is a plausible allegation of fact that says they violated the knock an ounce rule. That's your factual dispute that you claim has to go to the jury or the fact finder? Yes, Your Honor, that's part of it, Your Honor. As you know, the reasonableness of the execution of a search warrant depends on all the facts and circumstances. Here we have a police department that arrested somebody five days before. They show up in the middle of the night without a knock an ounce, disguised, in SWAT gear, instead of showing up at a reasonable hour of the day, tapping on the door, ringing the doorbell, asking politely to come in and search, and nothing bad would have happened. They would have apologized and gone home. Instead, they blew down the front door, scared everybody, refused to show a warrant, made people sit on the floor in the corner, handcuffed a man for 45 minutes when he had a heart condition, and even when he was cooperating and leading them to paperwork that were left by a previous occupant. They wouldn't let the mother go to her screaming seven-year-old who was just in her underwear. They threatened to take the seven-year-old out and sit her in a squad car, panicked the mother, wouldn't let the mother put on a robe over her negligee, kept telling them to sit down and shut up, separated family members one from the other. They terrorized these people for 45 minutes because they made a mistake. Okay, thank you, Counsel. I note that you're fired. Thank you, Your Honor. I would submit it's neither unconstitutional or illegal for the police officers to be impolite to a rape. That's not the constitutional standard. There's a question about how far you can extend your claims if you know, for example, that two officers, possibly three, apprehended Mr. Lawrence and took him back into the basement. Can you, based upon that, sue 13 officers? So, they say we don't know the identity, so the solution is to sue all 13. Since it was raised, it is a fact that Officer Coney was deposed. He indicated that some of the officers never went in the house. They were assigned to the perimeter. He identified who they were, indicated there was a knock before they entered, etc. But that's not what we're dealing with here. They now know that they have sued people who should not have been sued. But what we're focusing on— Can I make a point, Mr. McGinnis? Is it somewhat your point today that some of these people ought to be dismissed immediately? And if so, have you spoken to counsel about that, the wrong female is in the case? Yes. Have you spoken? I mean, it's not my business, but okay. Yes, we have. And I must say she has been very gracious and reasonable in that regard. So I have no fault pointed toward her in that respect. My issue is whether or not it is incumbent upon the plaintiff to know before they sue who did what. There's an assertion upon information and belief. Well, isn't it okay to call up the attorney for the other side—not you, but the other person—and say, Well, who was involved here? We don't want to charge the wrong people. And they got a list some way, and it's before you came in the case. That seems reasonable, isn't it? Yes. And it is also reasonable that the attorney said there was a knock. I mean, there was an announce before entry. So do you pick and choose? Well, of course. Does that relieve your responsibility to ascertain who did what? I mean, you can interview the attorney, and that's part of the investigation. But it sounds like the client gave contrary evidence that the young man who was awake told his lawyer nobody knocked. I did not read that in the complaint. I heard that he was in the basement. He was an overnight guest. I don't know if you can hear the doorbell or anything from the front door. And that's why we get upon information and belief. Counsel said, We don't know. Isn't that just a classic dispute? We view the complaint in the light most favorable to the plaintiff. And if there's a dispute about whether there was a knock or announce, that would later be determined by a fact finder? If it's well pled. And that is why Iqbal said, You can't get to court. You can't survive qualified immunity based upon conjecture. And that's classical conjecture. We didn't hear them, so they probably didn't knock. We don't know who made the misrepresentation to get the warrant. So they probably all made the misrepresentation to get the warrant. We don't know who took Mr. Lawrence in the basement. So they probably all took Mr. Lawrence in the basement. We don't know. You have to conclude your time. Thank you. Thank you very much for your argument.